**United States District Court**
For the Northern District of California

1
2
3
4
5
6
7
8                    IN THE UNITED STATES DISTRICT COURT

9                  FOR THE NORTHERN DISTRICT OF CALIFORNIA

10

11   CONTINENTAL CASUALTY CO,                No C 02-4891 VRW
                                             <u>Related to:</u>
12              Plaintiff                    02-5292 VRW

13              v                            ORDER

14   UNITED STATES OF AMERICA,

15              Defendant
     _____/

16
     UTE SISTRUNK,
17
                Plaintiff
18
                v
19
     UNITED STATES OF AMERICA,
20
                Defendant.
21   _____/

22

23          Plaintiffs Continental Casualty Co ("Continental") and

24   Ute Sistrunk ("Sistrunk") move for leave to amend their respective

25   complaints against defendant United States of America ("the

26   government").  Docs ##52, 57.  Specifically, Continental and

27   Sistrunk wish to amend their complaints to seek damages in excess

28   of the damages requested in their administrative claims.

United States District Court

For the Northern District of California

Anticipating these motions, the government previously moved to limit Continental's and Sistrunk's damages to the amount stated in the administrative claims.  Doc #45.  Additionally, the government opposes the motions for leave to amend.  Doc #66.  The court heard oral argument on these motions on June 9, 2005.  Based on the parties' arguments and the applicable federal law, the court GRANTS Continental's and Sistrunk's motions for leave to amend and DENIES the government's motion as moot.

I

On January 29, 2000, Sistrunk sustained a low back injury while employed as a nursing assistant at Sunbridge Healthcare.  Doc #53 (Cont Motion) at 2.  She was initially treated conservatively with physical therapy, but when the pain persisted, orthopedist Dr Samuel Jorgenson recommended surgery.  Doc #67 (Cheng Decl), Ex C at 2.  On March 28, 2000, Sistrunk was involved in an automobile collision with a United States postal employee, David Tyler, who was operating a Postal Service vehicle.  Id.  Sistrunk claims that the auto accident not only made her back worse, but also caused neck pain and migrainous headaches.  Id.  In December 2000, Sistrunk underwent her first back surgery, a posterior lateral fusion at the L5-S1 level.  Cont Motion at 2.  Jorgenson conducted the surgery.  Id.

Following the surgery, Sistrunk's condition improved, and she was able to work in a modified capacity from January 2001 to February 2002.  Id.  In October 2001, however, Sistrunk again experienced low back pain and saw Dr Barbara McQuinn regarding this condition.  Doc #67 (Cheng Decl), Ex C at 1.  McQuinn concluded

2

United States District Court

For the Northern District of California

1   that due to low back pain, Sistrunk had developed secondary

2   depression, insomnia and difficulties with adequate pain control.

3   Id at 6.  Specifically, McQuinn concluded: "[A]t present a referral

4   for management of these issues at a pain management center would be

5   quite helpful here."  Id at 6-7.  Moreover, McQuinn concluded that

6   Sistrunk was "not yet Permanent and Stationary, particularly

7   because matters regarding the utility of, or even the necessity of,

8   further low back surgery are still apparently unresolved."  Id at

9   7.  McQuinn advised that "perhaps [Sistrunk's] pain medications and

10  her depression might be more easily managed, in conjunction with

11  her othopedic management by Dr Jorgenson, by referral of the

12  patient to a mutidisciplinary pain center."  Id.

13          McQuinn presently states that the pain management program

14  she recommended for Sistrunk in October 2001 was "a relatively low

15  level program."  Doc #79 (McQuinn Statement, 4/21/05) at 2.

16          In early March 2002, Sistrunk underwent two more

17  surgeries with Dr Jorgenson -- an anterior spinal fusion at L5-S1

18  and a removal of hardware at that spinal level.  Doc #45 (Gov Mot)

19  at 4.  Following these surgeries in March 2002, Continental and

20  Sistrunk filed separate administrative claims with United States

21  Postal Service Delivery Programs Support, as required by the

22  Federal Tort Claims Act (FTCA), 28 USC § 2675(a).  Cheng Decl, Ex D

23  and B.  Continental -- which had paid and continues to pay workers'

24  compensation benefits to Sistrunk on behalf of Sunbridge Healthcare

25  as a result of her injuries -- requested $150,000.  Cheng Decl, Ex

26  D.  Sistrunk requested $556,935.  Cheng Decl, Ex B.  When these

27  administrative claims were denied, Continental and Sistrunk filed

28  separate complaints in this court pursuant to the FTCA in October

**3**

United States District Court

For the Northern District of California

1   and November 2002, respectively.  Docs ##1, 1 (02-5292 VRW).

2   Continental's and Sistrunk's complaints did not specify the amount

3   of damages requested and thus the court will assume -- since

4   Continental and Sistrunk now seek leave to amend -- that each

5   complaint requests the same amount of damages listed in the

6   administrative claim.  Id.

7         On October 4, 2002, Dr Francis Pecoraro, a pain

8   management specialist, documented Sistrunk's continued complaints

9   of significant low back pain and referred her to Dr Hieu Ball for

10  surgical consideration.  Doc #62 (Cont Decl), Ex D.  Ball performed

11  surgery on Sistrunk in June 2003, replacing the hardware at the L5-

12  S1 disc level.  Cont Decl, Ex F.

13        On October 28, 2003, Sistrunk saw Dr Joseph Izzo and

14  informed him that she felt worse after the June 2003 surgery with

15  Ball.  Doc #69 (Cheng Reply Decl), Ex E.  Izzo concluded that

16  "[g]iven [Sistrunk's] current state of affairs seven months after

17  her surgery, it is highly unlikely that any significant recovery

18  will occur, allowing her to pursue any form of meaningful

19  employment."  Id at 18.  Izzo informs the court that "meaningful

20  employment" meant "going back to her $10.00 per hour job."  Doc #78

21  (Izzo Supp Statement, 5/1/05).  He also explains that his November

22  7, 2003, statement was a "tentative view awaiting further

23  evaluation" that was not intended to be a report but simply "a note

24  to my file, not for dissemination."  Id at 2.

25        In November 2004, Izzo concluded that Sistrunk would not

26  be able to return to work, either at her previous job or any

27  employment at all.  Id.  But Izzo was unable to provide Sistrunk

28  with any opinion as to the "extent, cost or duration of her future

**4**

United States District Court

For the Northern District of California

1   medical care in terms of pain management."   Id.   On October 27,

2   2004, Sistrunk sent a letter informing the government of the pain

3   management care she was receiving.   Doc #57 (Sist Mot), Ex 8.   The

4   letter stated that the future costs of such care would not be

5   determined until December 15, 2004.   Id at 2.

6           Shortly before the January 28, 2005, factual discovery

7   cut-off date, Doc #43, Continental and Sistrunk informed the

8   government that they would seek leave to amend their complaints to

9   increase the damages requested in their administrative claims.   Doc

10  #66 (Gov Opp).   Continental and Sistrunk cited Sistrunk's need for

11  "lifetime pain management" as the basis for the proposed

12  amendments.   Id.   In response, on February 1, 2005, the government

13  filed a motion to limit damages to the amount stated in the

14  administrative claims.   Doc #45.   Continental and Sistrunk

15  responded by filing motions for leave to amend their complaints on

16  March 30 and 31, 2005, respectively.   Docs ##52, 56.   Contrary to

17  Civ L R 10-1, neither Continental nor Sistrunk supplemented their

18  motion for leave to amend with a proposed amended complaint.   In

19  its memorandum, however, Continental states that it seeks to

20  increase the amount of damages requested to $900,000, a $750,000

21  increase.   Doc #52 at 2.   Sistrunk's memorandum (Doc #56) fails to

22  specify the amount of damages she will request if she is allowed to

23  amend her complaint.

24          The government opposes.   In its opposition, the

25  government offers three arguments why the motions for leave to

26  amend should be denied.   First, the government argues that

27  Continental and Sistrunk have not met their burden under 28 USC §

28  2675(b): they have not demonstrated that Sistrunk's current

United States District Court

For the Northern District of California

1   injuries were not "reasonably foreseeable" when Continental and

2   Sistrunk filed their administrative claims in March 2002.  Gov Opp

3   at 2.  Next, the government argues that Continental and Sistrunk

4   had numerous opportunities to seek leave to amend prior to filing

5   the current motions in March 2005.  Id.  Specifically, the

6   government argues that by waiting until January 2005 to reveal

7   their intent to seek leave to amend, Continental and Sistrunk

8   prejudiced the government because it did not have an adequate

9   opportunity to conduct factual discovery regarding Sistrunk's need

10  for pain management.  Id; Cheng Decl at 3.  Finally, the government

11  argues that Continental and Sistrunk failed timely to disclose

12  Sistrunk's need for lifetime pain management pursuant to FRCP

13  37(c)(1).  Gov Opp at 3; Doc #68 (Gov Reply) at 3.  The court

14  addresses each of these arguments in turn.

15

16                                II

17        28 USC § 2675(b) of the FTCA provides that an

18        Action under this section shall not be instituted
19        for any sum in excess of the amount of the claim
          presented to the federal agency, except where the
20        increased amount is based upon <u>newly discovered
          evidence not reasonably discoverable </u>at the time of
21        presenting the claim to the federal agency, or upon
          allegation and <u>proof of intervening facts</u>, relating
22        to the amount of the claim.  (emphasis added).

23        The Ninth Circuit has held that for a plaintiff to be

24  granted leave to amend a complaint under § 2675(b), "'[t]he

25  allegedly newly discovered evidence or intervening facts must not

26  have been reasonably capable of detection at the time the

27  administrative claim was filed'."  <u>Richardson v United States</u>, 841

28  F2d 993, 999 (9th Cir 1988) (quoting <u>Low v United States</u>, 795 F2d

                                6

United States District Court

For the Northern District of California

466, 470 (5th Cir 1986)).  "[W]hen a plaintiff does not know fully the medical extent of his injuries and expenses at the time of his administrative complaint, the exceptions to section 2675(b) are triggered."  <u>Powers v United States</u>, 589 F Supp 1084, 1110 (D Conn 1984) (cited with approval in <u>Richardson</u>, 841 F2d at 999).  Moreover, a <u>known</u> injury that worsens in "ways not reasonably discoverable by the claimant and his or her treating physician" at the time of the administrative claim can constitute "newly discovered evidence" or "intervening facts." <u>Michels v United States</u>, 31 F3d 686, 688 (8th Cir 1994).  See also <u>Cole v United States</u>, 861 F2d 1261, 1262 (11th Cir 1988) (holding that "a reasonably based change in expectation as to the severity and permanence of an injury is newly discovered evidence within the meaning of section 2675(b).").

Applying these principles, the court concludes that when Continental and Sistrunk filed their administrative claims in March 2002, neither could have been aware of the permanence of Sistrunk's condition and the necessity of lifetime pain management.  The government cites three cases in support of its argument that Continental's and Sistrunk's lifetime pain management claim was reasonably foreseeable at the time of their administrative claims. Docs ##45, 66, 68 (citing <u>Hill v United States</u>, 2002 WL 855909 (ND Cal April 26, 2002); <u>Salcedo-Albanez v United States</u>, 149 F Supp 2d 1240, 1244 (SD Cal 2001); <u>Kielwen v United States</u>, 540 F2d 676, 680 (4th Cir 1976)).  The court, however, found these cases to be of little, if any, guidance in resolving the current motion.  The extremely fact-sensitive nature of a § 2675(b) inquiry results in a plethora of cases that are of limited utility outside the facts of

1   each individual case.

2          As for actual evidence, the government relies heavily on

3   Dr McQuinn's October 2001 report as proof that lifetime pain

4   management costs were reasonably foreseeable when Continental and

5   Sistrunk filed their administrative claims in March 2002.  Docs

6   ##45, 66, 68.  In the report, McQuinn states that Sistrunk was "not

7   yet Permanent and Stationary" and that pain management "would be

8   quite helpful here."  Doc #67 (Cheng Decl), Ex C at 7. In addition,

9   McQuinn commented that the utility and necessity of further low

10  back surgery was "still apparently unresolved."  Id.  The court

11  finds these statements insufficient reasonably to inform

12  Continental and Sistrunk of the need for lifetime pain management.

13  Indeed, when she saw McQuinn in October 2001, Sistrunk had worked

14  in a modified capacity since her December 2000 surgery.  Moreover,

15  Sistrunk continued to work until February 2002, four months after

16  she saw McQuinn.  Gov Opp at 5.  More importantly, McQuinn's report

17  provided no specifics regarding the necessity, level, or duration

18  of pain management that she believed Sistrunk required; McQuinn

19  concluded simply that pain management would be "quite helpful."

20  Doc #67 (Cheng Decl), Ex C at 7.

21         Finally, McQuinn represents to the court that the pain

22  management Sistrunk now requires is "a high level program and not

23  one that was contemplated in my initial recommendation."  McQuinn

24  Statement at 2.  Furthermore, McQuinn states: "In my opinion one

25  could not have reasonably anticipated with any medical probability

26  in October 2001 that this would have been [Sistrunk's] condition

27  several years later, based on my evaluation of her in October

28  2001."  Id.  Because McQuinn was not aware of either the severity

8

United States District Court
For the Northern District of California

1    or the permanence of Sistrunk's condition, it is safe to conclude

2    that Continental and Sistrunk were also unaware.

3            The court concludes that Continental and Sistrunk have

4    satisfied their burden of showing that Sistrunk's current condition

5    was not reasonably foreseeable when they filed their administrative

6    claims in March 2002.  Accordingly, § 2675(b) does not bar their

7    requests for leave to amend.

8

9                               III

10           While Continental and Sistrunk are not prohibited from

11   amending under § 2675(b), the court must still inquire whether FRCP

12   15 bars the requested amendments.  FRCP 15(a) provides in relevant

13   part that "a party may amend the party's pleading only by leave of

14   court or by written consent of the adverse party; and leave shall

15   be freely granted when justice so requires."  The Ninth Circuit

16   directs district courts to apply Rule 15(a) with "extreme

17   liberality."  <u>Morongo Band of Mission Indians v Rose</u>, 893 F2d 1074,

18   1079 (9th Cir 1990) (citing <u>DCD Programs, Ltd v Leighton</u>, 833 F2d

19   183, 186 (9th Cir 1987)).

20           Courts have identified various factors that alone, or in

21   combination, may justify denial of leave to amend a pleading.

22   These factors are: (1) undue delay, (2) bad faith or dilatory

23   motive, (3) futility of the proposed amendment, (4) prejudice to

24   the opposing party and (5) repeated failures to cure deficiencies

25   by previous amendments.  William W Schwarzer, A Wallace Tashima,

26   James M Wagstaffe, <u>Federal Civil Procedure Before Trial</u> § 8:416

27   (Rutter Group, 2005).  The government explicitly argues that it

28   will be prejudiced by Continental's and Sistrunk's proposed

**United States District Court**
For the Northern District of California

**9**

United States District Court

For the Northern District of California

1  amendments.  Docs ##66, 67.  The court finds, however, that the

2  government has implicitly raised the ground of undue delay.  The

3  court will examine these two issues separately beginning with undue

4  delay.

5

6                                   A

7        The Ninth Circuit has held that "delay alone does not

8  provide sufficient grounds for denying leave to amend."  Hurn v

9  Retirement Fund Trust of Plumbing, Heating & Piping Industry of

10  Southern California, 648 F2d 1252, 1254 (9th Cir 1981).  "Where

11  there is lack of prejudice to the opposing party and the amended

12  complaint is obviously not frivolous or made as a dilatory maneuver

13  in bad faith, it is an abuse of discretion to deny such a motion."

14  Howey v United States, 481 F2d 1187, 1190-91 (9th Cir 1973).

15        In determining undue delay in the instant case, the

16  pertinent questions are: (1) when could Continental and Sistrunk

17  have reasonably known of the need for lifetime pain management and

18  (2) how much time passed between when Continental and Sistrunk

19  reasonably should have known and when they informed the government

20  of this knowledge?  First, the government argues that Continental

21  and Sistrunk knew of the permanence of Sistrunk's condition as

22  early as November 7, 2003, when Dr Izzo drafted his report.  Gov

23  Reply at 5.  Defendant relies on the following passage from Izzo's

24  report: "Given [Sistrunk's] current state of affairs seven months

25  after her surgery, it is highly unlikely that any significant

26  recovery will occur, allowing her to pursue any form of meaningful

27  employment."  Id.  Accordingly, the government asserts that

28  Continental and Sistrunk waited more than one year, until January

United States District Court

For the Northern District of California

1   2005, to inform it of their intention to seek leave to amend the

2   amount of damages requested.  Id.  The court disagrees.

3       First, Dr Izzo's report is far from the "employment death

4   knell" that the government portrays it to be.  Izzo represents to

5   the court that by stating that Sistrunk could "not pursue

6   meaningful employment" he meant "going back to her $10.00 per hour

7   job."  Izzo Supp Statement at 2.  Izzo believed that it was still

8   possible for Sistrunk to return to "some form of sedentary work."

9   Id.  Not until November 2004 did Izzo inform Continental and

10  Sistrunk that Sistrunk was not fit for any type of employment.  Id.

11  Even at this point, Izzo was still unable to provide plaintiff with

12  any opinion as to the "extent, cost or duration of her future

13  medical care in terms of pain management."  Id.

14      Dr Pecoraro represents to the court that "not until

15  approximately more than a year" after Sistrunk's June 2003 surgery

16  did it become clear to him that Sistrunk's condition had evolved to

17  a point of permanence -- precluding her from "any gainful

18  employment" and requiring ongoing medical treatment "for the

19  remainder of her life with little hope for significant

20  improvement."  Doc #78 (Pec Statement) at 3. (emphasis in

21  original).

22      Second, although Continental and Sistrunk did not

23  officially inform the government of their intention to seek leave

24  to amend damages until January 2005, Sistrunk did inform the

25  government on October 27, 2004, that "costly" "pain management was

26  being carried out utilizing medications."  Sist Motion, Ex 8 at 1.

27  Moreover, Sistrunk stated that although costs for this treatment

28  would not be calculated until December 15, 2004, costs could range

**United States District Court**
For the Northern District of California

1  from $3,000 to $5,000 <u>per month</u>.   Id at 2.

2          The court concludes that the earliest Continental and

3  Sistrunk became aware of Sistrunk's permanent condition and need

4  for lifetime pain management was October or November 2004.  And it

5  appears as soon as Sistrunk knew of the high costs of future pain

6  management, she informed the government via a letter.  Moreover,

7  Continental and Sistrunk had to wait until December 15, 2004, to

8  find out the exact cost of the future pain management.

9  Accordingly, the court concludes there was no undue delay by

10  Continental and Sistrunk in currently seeking leave to amend.

11

12                                  B

13          Prejudice to the opposing party is "by far the <u>most</u>

14  <u>important</u> and most common reason for denying leave to amend."

15  <u>Federal Civil Procedure Before Trial</u> at § 8:424 (emphasis in

16  original).  Absent prejudice, or a strong showing of any of the

17  remaining reasons for denying leave to amend, "there exists a

18  presumption under Rule 15(a) in favor of granting leave to amend."

19  <u>Eminence Capital, LLC v Aspeon, Inc</u>, 316 F3d 1048, 1052 (9th Cir

20  2003).  Where a motion to amend is brought late in the litigation,

21  however, delay may prejudice the opposing party's ability to

22  respond to the proposed amendment or to prepare for trial.  <u>Federal</u>

23  <u>Civil Procedure Before Trial</u> at § 8-424.1.

24          "[T]o justify denial of leave to amend, the prejudice

25  must be <u>substantial</u>."  <u>Federal Civil Procedure Before Trial</u> at § 8-

26  424.2 (emphasis in original) (citing <u>Morongo Band</u>, 893 F2d at 1079

27  (citing inordinate delay, prejudice, and potential futility of the

28  claims in affirming the denial of plaintiff's motion for leave to

**United States District Court**

For the Northern District of California

1    amend)).  Most important for the present motion, the need for

2    additional discovery is insufficient by itself to deny a proposed

3    amended pleading.  <u>United States v Continental Illinois National</u>

4    <u>Bank & Trust</u>, 889 F2d 1248, 1255 (2nd Cir 1989); <u>Genentech, Inc v</u>

5    <u>Abbott Laboratories</u>, 1989 US Dist LEXIS 9311, *5 (ND Cal 1989)

6    (Patel, J).

7          Because Continental and Sistrunk did not move for leave

8    to amend until after the January 28, 2005, discovery cut-off date,

9    the government insists that it was prejudiced because it did not

10   have "an adequate opportunity to conduct factual discovery."  Cheng

11   Decl at 3.  This hardly rises to the level of substantial

12   prejudice.  First, the government arguably did have the opportunity

13   to conduct discovery of lifetime pain management after it received

14   Sistrunk's October 27, 2004, letter informing it of Sistrunk's

15   costly treatment.  Second, even if the government had not had this

16   opportunity, the prejudice here is not so substantial to justify

17   denial of Continental's and Sistrunk's motions for leave to amend.

18   See <u>Morongo Band</u>, 893 F2d at 1079 (holding as substantial a two-

19   year delayed amended complaint that "would have greatly altered the

20   nature of the litigation and would have required the defendants to

21   have undertaken, at a late hour, an entirely new course of

22   defense").  In the instant case, additional discovery would enable

23   the government to examine further the lifetime pain management

24   costs.  See <u>Continental Illinois National Bank & Trust</u>, 889 F2d at

25   1255; <u>Genentech, Inc</u>, 1989 US Dist LEXIS 9311 at *5.  For these

26   reasons, Continental's and Sistrunk's motion to amend can be

27   granted without prejudicing the government.

28

**IV**

1    The final issue for resolution is whether Continental's

2 and Sistrunk's motions for leave to amend should be barred as

3 untimely disclosed under FRCP 37(c)(1).  Rule 37(c)(1) provides in

4 relevant part:

5         A party that without substantial justification
          fails to disclose information required by Rule
6         26(a) or 26(e)(1), or to amend a prior response to
          discovery as required by Rule 26(e)(2), is not,
7         unless such failure is harmless, permitted to use
          as evidence at trial, at a hearing, or on a motion
8         any witness or information not so disclosed.

9 The duty to supplement or correct prior disclosures or discovery

10 responses arises "if the party learns that in some material respect

11 the information disclosed is incomplete or incorrect."  FRCP

12 26(e)(1)-(2).  A party must supplement or correct its early

13 disclosures "at appropriate intervals" and amend incomplete or

14 incorrect discovery responses "seasonably."  Id.  "Supplementations

15 * * * should be made * * * with special promptness as the trial

16 date approaches."  Notes on the 1993 Amendments to FRCP 26(e).

17    As in the previous section, the government's Rule

18 37(c)(1) argument is based on the assumption that Continental and

19 Sistrunk knew as of November 7, 2003, the severity and permanence

20 of Sistrunk's condition.  Gov Reply at 5.  The court, however, has

21 rejected this argument; Dr Izzo did not inform Continental and

22 Sistrunk of Sistrunk's permanent condition until November 2004.

23 Izzo statement at 2.  Continental and Sistrunk informed the

24 government in October 2004 of Sistrunk's pain management treatment

25 and of their intention to amend in January 2005.  Accordingly,

26 Continental and Sistrunk did not violate Rule 37(c)(1).

27    On June 8, 2005, the government filed a notice of recent

28 decision directing the court's attention to <u>Evenflow Plumbing</u>

**14**

*United States District Court*
For the Northern District of California

**United States District Court**
For the Northern District of California

1   **_Company, Inc v Pacific Bell Directory_, 2005 WL 954469 (ND Cal April**

2   **26, 2005) (Laporte, J).  (02-5292 VRW) Doc #54.  The government**

3   **asserts that Judge Laporte's decision in _Evenflow_ supports its**

4   **argument that Continental and Sistrunk failed timely to supplement**

5   **or correct prior disclosures as required by Rule 26(e)(1).  Id.**

6         **In _Evenflow_, plaintiff provided Judge Laporte with new**

7   **evidentiary exhibits on April 18, 2005, <u>the day of trial</u>.  2005 WL**

8   **954469 at \*1.  These exhibits contained mathematical calculations**

9   **of plaintiff's alleged actual damages based upon a exhaustive**

10  **review of company contracts; evidence that had not been timely**

11  **presented to the court or defense counsel.  Id.  Such a submission**

12  **explicitly violated Judge Laporte's Case Management and Pretrial**

13  **Order which required all exhibits to be submitted to the court no**

14  **later than March 9, 2005.  Id.  Moreover, plaintiff wanted to use**

15  **this untimely exhibit to aid the testimony of a witness who was**

16  **<u>already on the stand</u>.  Id.  Judge Laporte noted that plaintiff had**

17  **failed to give this complex new exhibit to defense counsel until**

18  **<u>three</u> days prior to the trial, thus preventing defendant from**

19  **adequately preparing for cross-examination.  Id at 2.  Accordingly,**

20  **Judge Laporte struck any testimony based on the untimely evidence**

21  **and excluded the two exhibits based upon this evidence.  Id.**

22        **The court finds _Evenflow_ distinguishable in several**

23  **important respects from the present case.  First, the _Evenflow_**

24  **plaintiff specifically violated Judge Laporte's pretrial order;**

25  **Continental and Sistrunk have not violated any court orders.**

26  **Second, _Evenflow_ plaintiff's violation substantially prejudiced**

27  **defendant by preventing an effective cross-examination <u>at trial</u>; a**

28  **prejudice that could not be remedied.  In the instant case, any**

**15**

**United States District Court**
For the Northern District of California

1    prejudice caused by Continental's and Sistrunk's motion for leave

2    to amend can be remedied by additional discovery.

3

4                             V

5        In sum, the court GRANTS Continental's and Sistrunk's

6    motions for leave to amend (Docs ##52, 57) and DENIES as moot the

7    government's motion to limit damages to the amount stated in the

8    administrative claim.  Doc #45.  To remedy any prejudice that might

9    befall the government based on the granting of Continental's and

10    Sistrunk's motions for leave to amend, the court will reopen

11    factual discovery for the government.  Specifically, the government

12    will be permitted to pursue discovery regarding Sistrunk's need for

13    lifetime pain management.  This factual discovery should be

14    concluded on or before September 30, 2005.

15        The parties are ORDERED to appear on October 18, 2005, at

16    9am for a case management conference and to serve and file a joint

17    status report not to exceed five pages at least ten days in advance

18    of the case management conference.  If these dates are

19    inconvenient, counsel are directed to contact the courtroom deputy

20    Cora Delfin at (415) 522-2039 to arrange alternative dates.

21

22       IT IS SO ORDERED.

23

24    _____

25    VAUGHN R WALKER

26    United States District Chief Judge

27

28

16